Filed in Open Court
9/19/2023
Skyler B. O'Hara
By Musty Dodson
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS SMITH<br><br>Defendant. | Case No. 21-40111-LT |

PLEA AGREEMENT PURSUANT TO FEDERAL RULE
OF CRIMINAL PROCEDURE 11(c)(1)(C)

The United States of America, by and through Assistant United States Attorney Sara L. Walton, and Nicholas Smith, the defendant, personally and with his counsel, Mitch Biebighauser and Kirk Redmond, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 8 of the Indictment charging a violation of 18 U.S.C. § 1014, that is, False Statement on Loan and Credit Application. By entering into this plea agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense. The defendant understands that the maximum sentence which may be imposed as to Count 8 of the Indictment to which he has agreed to plead guilty is not more than thirty (30) years imprisonment, a $1,000,000.00 fine, five (5) years of supervised release, and a $100.00 mandatory special assessment. The defendant further agrees to forfeit property or money to the United States and pay restitution, as agreed.

2. **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

Ver. 17-09

In 2018, the defendant Nicholas J. Smith, began a banking relationship with Central National Bank (CNB). The defendant had previously received financing through Frontier Farm Credit, but was looking for another agricultural lender.

The defendant submitted documents to CNB beginning in April 2018 that materially inflated the number and value of assets to be used as collateral. On May 17, 2018, the defendant submitted a balance sheet to CNB in support of his loan application that represented the defendant owned assets include $827,700.00 worth of cattle and $1,102.920.00 of machinery and equipment. When the defendant signed the loan documents, including the balance sheet he provided, he knew that the assets listed above did not exist, were overvalued or were owned by third parties. CNB relied on the defendant's identification of assets and issued: 1) $1,650,000 line of credit for operating expenses related to his various businesses, and 2) $1,100,000 loan to pay off Frontier's balance and to purchase cattle.

After CNB issued the line of credit and loan, the defendant submitted fraudulent invoices for the purchase of cattle. Relying on those invoices, CNB issued payment for the invoices to persons determined to be associated with the defendant who did not sell the defendant cattle. After checks from the CNB accounts were issued, the defendant deposited personal checks from his associates into his personal checking account. Further, the defendant submitted fraudulent invoices for the purchase of seed. CNB subsequently sent wire transfers to pay the invoices. However, the transferred funds were sent to an individual to satisfy a debt the defendant owed to the individual, not for the purchase of seed.

In November of 2020 the defendant negotiated a Workout Agreement with CNB representing his ownership and valuation for a list of items pledged to CNB as collateral. At the time he negotiated the Workout Agreement, he knew that a significant number of the items were non-existent or destroyed. On November 11, 2020, representatives from CNB conducted an inspection of their collateral. During that inspection, the defendant showed CNB representatives cattle and equipment that he knew belonged to other persons, including cattle belonging to his grandmother.

In addition, the defendant made false statements on Farm Service Agency (FSA) applications. FSA is an agency of the United States Department of Agriculture (USDA). As part of the CARES Act, the USDA administered the Coronavirus Food Assistance Program (CFAP), which authorized disaster relief payments to qualified farmers and ranchers. The defendant submitted two CFAP applications that contained the same non-existent cattle that formed the basis of the CNB loans. As a result, the defendant received disaster assistance payments to which he was not entitled to in the amounts of $63,378 and $26,620.

The aforementioned acts occurred in the District of Kansas.

3. **Proposed Rule 11(c)(1)(C) Sentence.** The parties propose, as an appropriate disposition of the case:

(a)  thirty (30) months in prison on Count 8, 18 U.S.C. § 1014;

2

(b) three (3) years of supervised release, defendant will not request early termination of release;

(c) no fine;

(d) the mandatory special assessment of $100.00;

(e) the defendant agrees to pay restitution for all counts included in the Indictment in the amount of $2,844,462.34, further, parties acknowledge that any property or proceeds collected by the victim and applied to the preexisting civil judgment will equally apply to and offset the defendant's restitution obligation; and

(f) the defendant will not oppose the victim or victim representative listed in Count 1 of the Indictment from providing a victim impact statement or addressing the Court at sentencing.

The parties seek this binding plea agreement as an appropriate disposition of the case, because if the Court permits itself to be bound by the proposed sentence, it brings certainty to the sentencing process; it assures that the defendant and the government will benefit from the bargain they have struck; it serves the interests of justice; and it assures a sentence consistent with the sentencing factors of 18 U.S.C. § 3553(a). If the Court does not agree with the sentence, the defendant and United States may be restored to the positions they maintained prior to reaching this plea Agreement. This plea agreement centers on the defendant's agreement to enter his guilty plea as soon as the Court's schedule permits, thereby preserving valuable Court, prosecution, defense, United States Probation Office, United States Marshals' Service and other law enforcement resources.

4. **Application of the Sentencing Guidelines.** The parties are of the belief that the proposed sentence does not offend the advisory sentencing guidelines. Because this proposed

3

sentence is sought pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties are not requesting imposition of an advisory guideline sentence.

5. **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States agrees to dismiss the remaining counts of the Indictment at the time of sentencing, and agrees to not file any additional charges against the defendant arising out of the facts forming the basis for the present Indictment. Specifically, the United States will dismiss Counts 1-7 and 9-11 of the Indictment (Doc. 1).

6. **Consequences for Violating the Plea Agreement.** The United States' obligations under this plea agreement are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if he has breached this plea agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this plea agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this plea agreement's terms, this plea agreement will be deemed null and void, and the United States may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this plea agreement, he understands and agrees that all statements he made, any testimony he gave before a grand jury or any tribunal, or any leads

from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this plea agreement.

7. **Whether to Accept the Proposed Plea Agreement and Sentence is Up to the Court.** The Court has no obligation to accept the proposed plea agreement and sentence. It is solely within the Court's discretion whether to accept the proposed binding plea agreement as an appropriate disposition of the case.

8. **Withdrawal of Plea Permitted Only if the Court Does Not Accept the Plea Agreement and Proposed Sentence.** If the Court agrees to be bound by the proposed plea agreement and sentence, the parties shall be bound by all the terms of the proposed plea agreement and the defendant will not be permitted to withdraw his guilty plea. If the Court announces that it will NOT be bound by the proposed plea agreement, the parties agree that at that time either party may withdraw the proposed plea agreement, and if either does so, then all parties will be restored to the positions they were in prior to the entry of the defendant's plea. If neither party elects to withdraw the proposed plea agreement at the time the Court announces that it will not be bound, and before the Court proceeds with sentencing, then the parties shall be bound by all the terms of the proposed plea agreement and the defendant will not be permitted to withdraw his guilty plea.

9. **Forfeiture of Assets.** The defendant agrees to the imposition of a forfeiture judgment against him in the amount of $1,750,000.00, which sum represents proceeds obtained from Count 8. The defendant knowingly and voluntarily waives his right to a trial regarding forfeiture, and voluntarily waives all constitutional, legal and equitable defenses to the imposition of a forfeiture judgment. The defendant acknowledges and agrees that the imposition of a

5

forfeiture judgment shall not be deemed an alteration of the defendant's sentence or this agreement, and shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture. Additionally, the defendant agrees to the immediate entry of the Final Order of Forfeiture.

10. **Identification of Assets and Agreement Concerning Monetary Penalties (Restitution, Fines, Assessments) and Forfeiture.** The defendant agrees to cooperate fully with the United States Attorney's Office and specifically agrees as follows:

(a)  Defendant agrees to execute a financial statement provided by the United States Attorney's Office and to update the statement with any material changes within 30 days of any such change. Defendant further agrees to provide all supporting documentation, including, but not limited, to copies of federal tax returns. The defendant agrees to disclose all assets in which defendant has any interest or which defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, as well as any transfer of assets that has taken place within six years preceding the entry of the judgment in this criminal case. Additionally, the defendant agrees to periodically execute an updated financial statement at the request of the United States Attorney's Office until such time the judgment debt is paid in full.

(b)  Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. Defendant agrees the United States Attorney's Office may subpoena any records it deems relevant to conduct a full financial investigation. Defendant agrees to discuss or answer any questions by the United States relating to its financial investigation.

(c)  Defendant agrees that any waivers, consents, or releases executed for the United States Probation Office for purposes of preparation of the Presentence Report may be provided to the United States Attorney's Office. All information defendant provided to the United States Probation Office or independently obtained by the United States Probation Office may be provided to the United States Attorney's Office.

(d)  Defendant agrees not to encumber, transfer, or dispose of any monies, property, or assets under defendant's custody or control, without written approval from the United States Attorney's Office.

(e)  Defendant agrees that whatever monetary penalties the Court imposes (including any fine, restitution, assessment, or forfeiture judgment), will be due and payable

immediately and subject to immediate enforcement by the United States. Should the Court impose a schedule of payments, he agrees that the schedule of payments is a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If defendant is incarcerated, defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

(f) If defendant posted funds as security for defendant's appearance in this case, defendant authorizes the Court to release the funds to the Clerk of the United States District Court to be applied to the criminal monetary impositions at the time of sentencing.

(g) Defendant waives any requirement for demand of payment on any restitution, fine, assessment, or forfeiture judgment entered by this Court.

(h) Defendant agrees to notify the United States Attorney's Office within 30 days of any change of address or other contact information until the judgment debt is paid in full.

(i) Defendant agrees the terms of this agreement shall be incorporated into the Judgment in a Criminal Case.

(j) Defendant waives the administrative requirements of the Treasury Offset Program, including the requirement of default, and agrees to be immediately included in the Treasury Offset Program allowing federal benefits and payments to be offset and applied to the balance of criminal monetary penalties.

(k) Defendant agrees that noncompliance with any of the terms set forth in this paragraph will result in a continuance of the sentencing hearing.

11. **Restitution.** The defendant knowingly and voluntarily agrees and consents:

(a) The defendant agrees to pay restitution in the amount of $2,844,462.34.

(b) The defendant agrees that the total amount of restitution reflected in this Plea Agreement results from the defendant's fraudulent conduct.

(c) The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, which it may do as a condition of supervised release, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

7

(h)  If the defendant makes a payment of the restitution agreed to in this paragraph prior to sentencing, the payment will be applied as a credit against the restitution ordered pursuant to this paragraph.

(i)  The defendant agrees to send all payments made pursuant to the Court's restitution order to the Clerk of the Court at the following address:

>  Clerk, U.S. District Court
>  401 N. Market, Room 204
>  Wichita, Kansas 67202

12.  **Payment of Special Assessment.**  The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against him at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

13.  **Waiver of Appeal and Collateral Attack.**  The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including the restitution, length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed in accordance with the sentence recommended by the parties under Rule 11(c)(1)(C). The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought

under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court imposes a sentence in excess of the sentence recommended by the parties under Rule 11(c)(1)(C). However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the foregoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

14. **FOIA and Privacy Act Waiver.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

15. **Full Disclosure by United States.** The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning his background, character, and conduct, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he is pleading guilty. The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The defendant also has the right to provide

information concerning the offense and to make recommendations to the Court and the United States Probation Office.

16. **Parties to the Agreement.** The defendant understands this plea agreement binds only him and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

17. **No Other Agreements.** The defendant has had sufficient time to discuss this case, the evidence, and this plea agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided. Further, the defendant acknowledges that he has read the plea agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this plea agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this plea agreement embodies each and every term of the agreement between the parties.

18. The defendant acknowledges that he is entering into this plea agreement and is pleading guilty because he is guilty. He further acknowledges that he is entering his guilty plea freely, voluntarily, and knowingly.

/s/ Sara L. Walton                                  Date: 9/18/2023
Sara L. Walton
Assistant United States Attorney


/s/ Stephen A. Hunting                              Date: 09/18/2023
Stephen A. Hunting
Supervisor

Digitally signed by DUSTON SLINKARD
Date: 2023.09.18 10:34:45 -05'00'
                                                    Date: 09/18/2023
For CARRIE N. CAPWELL
Criminal Chief

_____  Date: 9-19-23
Nicholas Smith
Defendant

_____  Date: 9-19-23
Mitch Biebighauser
Kirk Redmond
Counsel for Defendant